UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ohio Savings Bank,

    Plaintiff,

v().  Civ. No. 05-45 (JNE/SRN)
ORDER
Robert Duncanson, Jacquelyn Duncanson, and
Progressive Casualty Insurance Company,

    Defendants.

---

William W. Jacobs, Esq., Thompson Hine LLP, and Nicholas N. Nierengarten, Esq., Gray Plant Mooty Mooty & Bennett, P.A., appeared for Plaintiff Ohio Savings Bank.

Ralph V. Mitchell, Esq., Lapp, Libra, Thomson, Stoebner & Pusch, appeared for Defendants Robert Duncanson and Jacquelyn Duncanson.

Thomas J. Vollbrecht, Esq., Faegre & Benson LLP, appeared for Defendant Progressive Casualty Insurance Company.

---

After the president of a closing agent stole funds advanced by Ohio Savings Bank (OSB) to table fund[1] several mortgages, OSB brought this action against its insurer, Progressive Casualty Insurance Company (Progressive), and mortgagors of one of the mortgages, Robert and Jacquelyn Duncanson, seeking a declaration that OSB is entitled to coverage under a Financial Institution Bond (Bond) issued by Progressive or, in the alternative, that the mortgagors are liable to OSB.[2] OSB also asserted claims against Progressive for breach of contract and

---

[1] "Table funding means a settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds." 24 C.F.R. § 3500.2(b) (2006).

[2] The Duncansons are the only mortgagors sued by OSB in this action. The Court dismisses without prejudice OSB's claim for declaratory relief against the mortgagors other than the Duncansons. *See Diagnostic Unit Inmate Council v. Motion Picture Ass'n of Am., Inc.*, 953

1

negligence. The Duncansons alleged counterclaims for credit defamation and for violations of the Truth in Lending Act and the Fair Credit Reporting Act. They also sought a declaration that they had rescinded the loan transaction. The case is before the Court on Progressive's Motion for Summary Judgment; OSB's Motion for Summary Judgment Against Defendant Progressive Casualty Insurance Company; and the Duncansons' Motion for Partial Summary Judgment. For the reasons set forth below, the Court grants Progressive's motion, denies OSB's motion, and grants the Duncansons' motion.

## I. BACKGROUND

OSB is a savings bank that originates, purchases, and sells residential mortgage loans. Advantage Investors Mortgage Corporation (AIM) was in the business of originating mortgage loans and selling them to banks, including OSB. AIM did not contribute funds to the loans. Instead, a bank provided funds for a loan to a closing agent for the purposes of closing the transaction between AIM and the borrower and simultaneously selling the loan from AIM to the bank.

In May 2002, several individuals, including the Duncansons, agreed to refinance their mortgages by executing notes and mortgages in AIM's favor. OSB agreed to purchase eleven residential mortgage loans from AIM. First National Title (FNT) served as the closing agent for the eleven loans. From June 3 to 5, 2002, OSB disbursed approximately $1.3 million to FNT to table fund the loans. James Niblock, FNT's president, stole approximately $1.1 million of the funds disbursed by OSB.[3] As a result of Niblock's theft, eight of the eleven pre-existing notes

---

F.2d 376, 379 (8th Cir. 1992) (stating that "declaratory relief may properly be withheld for nonjoinder of interested parties").

[3] Niblock later pleaded guilty to wire fraud. He is currently serving a sentence of 19.5 years in federal prison.

and mortgages remain unpaid and unsatisfied.  The Duncansons are among the mortgagors whose first mortgages were not satisfied due to Niblock's theft.  With the exception of one payment, OSB has not received any payments associated with the eight loans.  None of the original mortgages and assignments of mortgages that OSB purchased from AIM were recorded, and their present locations are unknown.

In July 2002, OSB made a claim against Progressive under the Bond,[4] which OSB had purchased in June 2001.  OSB asserted that the Bond provided coverage under Insuring Agreement (E) and the Fraudulent Mortgages Insuring Agreement.  As provided in Section 2(e), the Bond does not cover:

> loss resulting directly or indirectly from the complete or partial nonpayment of, or default upon, any Loan or transaction involving the Insured as a lender or borrower, or extension of credit, including the purchase, discounting or other acquisition of false or genuine accounts, invoices, notes, agreements or Evidences of Debt, whether such Loan, transaction or extension was procured in good faith or through trick, artifice, fraud or false pretenses, except when covered under Insuring Agreement[] . . . (E).

Under Insuring Agreement (E), Progressive agrees to indemnify OSB for:

> Loss resulting directly from the Insured having, in good faith, for its own account or for the account of others,
>
> >    (1)    acquired, sold or delivered, or given value, extended credit or assumed liability, on the faith of, any original
> >
> > >    (a)    Certificated Security,
> > >
> > >    (b)    Document of Title,
> > >
> > >    (c)    deed, mortgage or other instrument conveying title to, or creating or discharging a lien upon, real property,
> > >
> > >    (d)    Certificate of Origin or Title,
> > >
> > >    (e)    Evidence of Debt,
> > >
> > >    (f)    corporate, partnership or personal Guarantee,

---

[4]    The Bond is Standard Form No. 24, Revised to January 1986.

   (g)  Security Agreement,

   (h)  Instruction to a Federal Reserve Bank of the United States, or

   (i)  Statement of Uncertificated Security of any Federal Reserve Bank of the United States

 which

   (i)  bears a signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent, registrar, acceptor, surety, guarantor, or of any person signing in any other capacity which is a Forgery, or

   (ii)  is altered, or

   (iii)  is lost or stolen;

 (2) guaranteed in writing or witnessed any signature upon any transfer, assignment, bill of sale, power of attorney, Guarantee, endorsement or any items listed in (a) through (h) above;

 (3) acquired, sold or delivered, or given value, extended credit or assumed liability, on the faith of any item listed in (a) through (d) above which is a Counterfeit.

 Actual physical possession of the items listed in (a) through (i) above by the Insured, its correspondent bank or other authorized representative, is a condition precedent to the Insured's having relied on the faith of such items.

The Bond also includes a Fraudulent Mortgages Insuring Agreement, which states:

 1. The attached bond is amended by inserting an additional Insuring Agreement as follows:

        FRAUDULENT MORTGAGES

 Loss resulting directly from the Insured's having, in good faith and in the course of business in connection with any Loan, accepted or received or acted upon the faith of any real property mortgages, real property deeds of trust or like instruments pertaining to realty or assignments of such mortgages, deeds of trust or instruments which prove to have been defective by reason of the signature thereon of any person having been obtained through trick, artifice, fraud or false pretenses or the signature on the recorded deed conveying such real property to the mortgagor or grantor of such mortgage or deed of trust having been obtained

> by or on behalf of such mortgagor or grantor through trick, artifice, fraud or false pretenses.
>
> 2.  The Loan Exclusion Clause, Section 2(e), shall not apply to the Insuring Agreement set forth in paragraph 1 of this rider.

After Progressive denied OSB's claim, OSB brought this action.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.  Progressive's motion**

*1.  The Bond*

Progressive contends that it is entitled to summary judgment on OSB's claims for declaratory relief and breach of contract because OSB is not entitled to coverage under the Bond. OSB asserts that coverage is available under either Insuring Agreement (E) or the Fraudulent Mortgages Insuring Agreement.

5

The interpretation of an insurance contract is a question of law.[5] *Nat'l City Bank of Minneapolis v. St. Paul Fire & Marine Ins. Co.*, 447 N.W.2d 171, 175 (Minn. 1989); *City of Sharonville v. Am. Employers Ins. Co.*, 846 N.E.2d 833, 836 (Ohio 2006). If language in an insurance contract is unambiguous, a court interprets it in accordance with its plain and ordinary meaning. *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 799 (Minn. 2004); *City of Sharonville*, 846 N.E.2d at 836. Ambiguous language is construed against the insurer. *Empire State Bank of Cottonwood v. St. Paul Fire & Marine Ins. Co.*, 441 N.W.2d 811, 812-13 (Minn. Ct. App. 1989) (discussing interpretation of bankers blanket bond); *Bank One, Steubenville, NA v. Buckeye Union Ins. Co.*, 683 N.E.2d 50, 53-54 (Ohio Ct. App. 1996) (same).

With regard to Insuring Agreement (E), OSB and Progressive dispute whether the mortgages that OSB purchased from AIM are "lost or stolen." According to Progressive, the agreement covers losses directly resulting from securities lost by or stolen from their rightful owner that are in the actual physical possession of the insured or its authorized representative at the time the insured purports to have acted in reliance on them. OSB maintains that the agreement does not require the securities to be lost or stolen at the time that OSB extended value.

As set forth above, Progressive agreed to indemnify OSB for "[l]oss resulting directly from [OSB] having . . . acquired, sold or delivered, or given value, extended credit or assumed liability, on the faith of, any original [document] which . . . is lost or stolen." Actual physical possession of the document by OSB or its authorized representative is a condition precedent to OSB having relied on the faith of the document. Consequently, coverage under Insuring

---

[5] Progressive asserts that Ohio law applies to OSB's claims against it. Neither Progressive nor OSB identifies an actual conflict between the laws of Minnesota and Ohio as applied to OSB's claims. Consequently, the Court need not decide which state's law applies. *See Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 93-94 & n.2 (Minn. 2000); *Richie v. Paramount Pictures Corp.*, 544 N.W.2d 21, 29-30 (Minn. 1996).

Agreement (E) depends on OSB or its authorized representative's actual physical possession of a document lost by or stolen from its true owner. The word "lost" unambiguously refers to a document that was lost by its true owner before OSB came into possession of the document. Similarly, the word "stolen" unambiguously refers to a document that was stolen from its true owner before OSB took custody of the document. *See Resolution Trust Corp. v. Aetna Cas. & Sur. Co. of Ill.*, 25 F.3d 570, 580-81 (7th Cir. 1994) ("Insuring Agreement (E) applies to losses resulting from the acquisition of, *inter alia*, securities that have a defect in title at the time of acquisition, and not to securities that are stolen after the insured has taken possession of them."); *Bank of the Sw. v. Nat'l Sur. Co.*, 477 F.2d 73, 77 (5th Cir. 1973) ("To recover for a loss on any documents which are 'stolen,' within the meaning of Coverage E of the Bond, the Bank must be in a situation where it could be required to give up the allegedly stolen document to the rightful owner."); *Exeter Banking Co. v. N.H. Ins. Co.*, 438 A.2d 310, 314-15 (N.H. 1981) ("By using the past tense of the verb steal, the policy requires that the 'stealing' occur prior to the insured's actions."). There is no evidence in the record that the mortgages and assignments of mortgages were lost or stolen when OSB disbursed the funds to FNT. The subsequent loss or theft of the mortgages or assignment of mortgages does not afford OSB coverage under Insuring Agreement (E).

OSB and Progressive next dispute whether OSB experienced a loss covered by the Fraudulent Mortgages Insuring Agreement. Applying Pennsylvania law, the Third Circuit read a fraudulent mortgage rider similar to the Bond's Fraudulent Mortgages Insuring Agreement to cover losses caused by fraudulently induced signatures on mortgages:

> The Rider thus would cover bank losses resulting when the seller of real property fraudulently induces the mortgagor to purchase the property and sign a mortgage by promising that the mortgage will never be enforced, by misrepresenting to the mortgagor that the mortgage covers a different piece of property, or by telling the

7

>   mortgagor that the document being signed was a contract to purchase rather than a mortgage.

*Jefferson Bank v. Progressive Cas. Ins. Co.*, 965 F.2d 1274, 1280 (3d Cir. 1992); *cf. Fed. Deposit Ins. Corp. v. Firemen's Ins. Co. of Newark, N.J.*, 109 F.3d 1084, 1088 (5th Cir. 1997) (per curiam) ("[A] covered instrument does not automatically become defective under the Rider merely by containing a signature that was obtained fraudulently."); *N. Jersey Sav. & Loan Ass'n v. Fid. & Deposit Co. of Md.*, 660 A.2d 1287, 1300 (N.J. Super. Ct. Law Div. 1993) ("A mortgage may have been induced by fraudulent acts, but the signature may be valid.").

In this case, it is undisputed that mortgagors of the mortgages underlying OSB's claim against Progressive knew they were executing mortgages to refinance pre-existing mortgages on their houses. There is no evidence that AIM made any misrepresentations with intent to mislead them when it obtained their signatures.[6] Consequently, signatures obtained through trick, artifice, fraud or false pretenses did not cause the losses allegedly experienced by OSB. *See Carpenter v. Vreeman*, 409 N.W.2d 258, 260-61 (Minn. Ct. App. 1987) ("A contract is voidable if a party's assent is induced by either a fraudulent or a material misrepresentation by the other party, and is an assertion on which the recipient is justified in relying."); *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 578 (Ohio 1998) ("In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to her detriment."); *cf. Bjorklund v. Aetna Cas. & Sur. Co.*, 306 N.W.2d 838, 839 (Minn. 1981) ("[I]t

---

[6] Many of the mortgagors testified at their depositions that they would not have executed the mortgages had they known Niblock would later steal the funds that were supposed to satisfy the pre-existing mortgages. Their testimony reveals that they feel "tricked" not because of any misrepresentations by AIM, but because of Niblock's theft. OSB has not offered any evidence of collusion between Niblock and the representatives of AIM that solicited the mortgagors. In fact, in several answers to the Duncansons' request for admissions, OSB disclaimed knowledge of whether AIM's representatives colluded with Niblock.

was the clear intent of the parties that coverage be excluded if the employer was induced to voluntarily part with its vehicles on the false pretense of an employee that he intended to service them whereas his actual purpose was to convert them to his own use."). Instead, OSB's alleged losses come from Niblock's theft of the funds OSB disbursed to table fund the eight mortgages. The Court therefore concludes that the Fraudulent Mortgages Insuring Agreement does not provide coverage to OSB.

In short, the record, viewed in the light most favorable to OSB, reveals that neither Insuring Agreement (E) nor the Fraudulent Mortgages Insuring Agreement covers OSB's alleged losses. The Court therefore grants Progressive's motion as it relates to OSB's claims for declaratory relief and breach of contract.

   2.   *Negligence*

OSB's negligence claim rests on OSB's contention that Progressive failed to disclose how Progressive interpreted the coverage provided by the Bond. Progressive argues that it is entitled to summary judgment on this claim because it owed no duty to OSB to explain the Bond's coverage. An insurer does not have a duty to disclose to an insured the insurer's interpretation of a policy unless the insurer has affirmatively undertaken the obligation to do so. *See Ind. Ins. Co. v. Midwest Maint., Inc.*, 174 F. Supp. 2d 678, 681 (S.D. Ohio 2001) ("[Insured] contends that [Insurer] had a legal duty to explain that prior claims brought against [Insured] were not covered losses, even though [Insurer] voluntarily paid those claims. The Court finds absolutely no support in Ohio law for such a proposition."); *Gabrielson v. Warnemunde*, 443 N.W.2d 540, 543-45 (Minn. 1989) (summarizing duty of insurance agents); *Minn. Mut. Fire & Cas. Ins. Co. v. Manderfeld*, 482 N.W.2d 521, 526-27 (Minn. Ct. App. 1992) ("We affirm the trial court's conclusion that the representative owed no duty to explain the presence of the

exclusion. The record indicates no evidence of special circumstances that would give rise to a duty to act affirmatively."); *Martin v. Grange Mut. Ins. Co.*, 757 N.E.2d 1251, 1255-56 (Ohio Ct. App. 2001) ("[I]f an insurance company has taken steps in the past to notify insureds of changes in the law bearing on coverage or some other term of a policy, the company may then be required to instruct policyholders on further reforms."). Here, there is no evidence that Progressive affirmatively undertook an obligation to explain the Bond to OSB. Consequently, Progressive did not owe a duty to OSB to explain the Bond. The Court therefore concludes that Progressive is entitled to summary judgment on OSB's negligence claim.

**B.     OSB's motion**

OSB moves for summary judgment on its claims against Progressive. For the reasons set forth above, Progressive is entitled to summary judgment. The Court therefore denies OSB's motion.

**C.     The Duncansons' motion**

The Duncansons assert that they are entitled to summary judgment on OSB's claim against them for declaratory relief because OSB cannot enforce the note they executed. According to the Duncansons, the note is a negotiable instrument under the Uniform Commercial Code as adopted in Minnesota. *See* Minn. Stat. § 336.3-104 (2004). For present purposes, they do not dispute that OSB might be a "person entitled to enforce" the note. *See id.* § 336.3-301. The Duncansons contend that they issued the note in consideration for a promise to make a loan. Because that promise was not fulfilled, they maintain that they have a defense to the note's enforcement. *See id.* §§ 336.3-303(b), -305(a)(2). Acknowledging that the defenses set forth in section 3-305(a)(2) are ineffective against a holder in due course, *see id.* § 3-305(b), the

Duncansons contend that OSB is not a holder in due course.  Finally, even if OSB is a holder in due course, the Duncansons maintain that OSB cannot enforce the note.

OSB responds that there was consideration because AIM fulfilled its promise to the Duncansons.  In the alternative, OSB asserts that it is a holder in due course.  Consequently, OSB argues, the Duncansons cannot raise their defense against OSB.

The Court first considers whether the Duncansons have a potential defense to the note's enforcement.  "If an instrument is issued for a promise of performance, the issuer has a defense to the extent performance of the promise is due and the promise has not been performed."  *Id.* § 336.3-303(b).  In this case, the Duncansons issued a note in consideration for AIM's promise to make a loan.  The Duncansons' loan was scheduled to close on June 4, 2002.  OSB advanced funds to FNT to table fund the Duncansons' loan, and Niblock stole the funds.  Consequently, the Duncansons never received the promised proceeds.  Under these circumstances, OSB's contention that there was no failure of consideration turns on whether FNT was holding the funds for OSB at the time of the theft.

Many jurisdictions have adopted the general rule that the risk of loss of funds held in a typical deed and money escrow falls, as between the buyer and seller, on the one who owns the property at the time of the loss.  *See, e.g.*, *Bixby Ranch Co. v. United States*, 35 Fed. Cl. 674, 679 (1996); *Neb. Hosp. Ass'n Charitable, Scientific, & Educ. Found. v. C & J P'ship*, 682 N.W.2d 248, 252 (Neb. 2004); *see also* Restatement (Second) of Agency § 14D cmt. a (1958) ("If the escrow holder loses or disposes of an escrow, the one having the legal title to it at the time has the risk of loss and a corresponding claim against the escrow holder if the loss is caused by the latter's fault."); 28 Am. Jur. 2d *Escrow* § 31 (2000) ("As a general rule, a loss resulting from the default, peculation, or similar wrong of an escrow holder, must, as between the parties to the

11

escrow transaction, be borne by the one who, at the time of its occurrence, was lawfully entitled to escrowed item . . . ."); H.D. Warren, Annotation, *Who must bear loss resulting from defaults or peculations of escrow holder*, 15 A.L.R.2d 870, 871 (1951) ("Speaking generally, it has become well settled that a loss occasioned by the default, peculation, or similar wrong of an escrow holder, must, as between the parties to the escrow transaction, be borne by the one who, at the time of its occurrence, was lawfully entitled to the right or property affected."). Minnesota law accords with this general rule. *See Berger v. Knobel*, 228 N.W. 559, 559 (Minn. 1930) ("The plaintiff and the defendant are equally innocent of wrong. The one whose agent Lane was must suffer. The evidence recited sustains the finding that Lane when he appropriated the money was the agent of the defendant, and he must bear the loss."). In this case, OSB admits that it advanced funds to FNT to table fund the Duncansons' mortgage "subject to certain conditions, limitations, and instructions for use" of the funds. OSB also admits that "FNT failed to comply with the instructions issued by OSB and failed to obtain satisfaction of the conditions and to comply with the limitations for use of the monies remitted by OSB." FNT's failures reveal that the conditions precedent to funding the Duncansons' mortgage had not occurred when Niblock stole the funds advanced by OSB. Consequently, neither AIM nor the Duncansons acquired legal title to the funds. It is undisputed that the Duncansons never received the promised proceeds due to Niblock's theft. Accordingly, the Duncansons have a defense to the note's enforcement. *See* Minn. Stat. §§ 336.3-303(b), -305(a)(2).

The Court next considers whether OSB is a holder in due course of the note executed by the Duncansons so as to prevent them from asserting their defense. *See id.* § 336.3-305(a)(2), (b). For the purpose of this motion, the Duncansons contend only that OSB took the note neither for value nor without notice of the Duncansons' defense. *See id.* § 336.3-302(a)(2).

OSB asserts that it took the note from AIM for value because it fully performed its promise to provide funds for the Duncansons' loan. *See id.* § 336.3-303(a)(1). As explained above, OSB advanced funds to FNT to table fund the Duncansons' mortgage. When Niblock stole the funds, OSB had legal title to the funds. Consequently, OSB did not fully perform its promise to provide funds for the Duncansons' loan. *See Menard, Inc. v. King De Son, Co.*, 467 N.W.2d 34, 37 (Minn. Ct. App. 1991) ("A bank gives value when money is *actually* paid. This is distinguished from when credit is given to an account but the customer is not allowed to draw on the funds until the instrument has been approved. This is not giving value." (citations omitted)). OSB therefore did not give value for the note under section 336.3-303(a)(1).

OSB also maintains that it took the note from AIM for value by incurring an irrevocable obligation to the Duncansons to fund their loan. *See* Minn. Stat. § 336.3-303(a)(5). According to OSB, it bound itself to fund the Duncansons' loan by placing funds in escrow. The record does not support OSB's argument. OSB and AIM entered into a Master Correspondent Loan Purchase Agreement, which governed the relationship between OSB and AIM with respect to the Duncansons' loan. In the agreement, OSB and AIM established a buyer-seller relationship: "The relationship of Correspondent [AIM] and Purchaser [OSB] is and shall be that of seller and purchaser of assets, and not that of creditor/debtor, partnership or joint venture relationship. Correspondent has not acted as agent for, or on behalf of, Purchaser in originating any Mortgage Loan." The agreement provides that it "shall not be deemed to confer in favor of any person or entity not a party hereto any rights whatsoever as third party beneficiary." OSB also retained rights, under certain circumstances, to release itself from any obligation to AIM to purchase mortgage loans. Moreover, under certain conditions, OSB could compel AIM to buy back loans previously purchased by OSB. Viewed in the light most favorable to OSB, the record reveals

that OSB did not take the note from AIM in exchange for incurring an irrevocable obligation to the Duncansons. OSB therefore did not give value for the note under section 336.3-303(a)(5).

Because OSB did not take the note for value, OSB is not a holder in due course.[7] *See id.* § 336.3-302(a)(2). OSB is therefore subject to the Duncansons' defense to the note's enforcement. *See id.* § 336.3-305(a)(2), (b). The failure of consideration renders OSB unable to enforce the note. *See id.* § 336.3-303(b). The Court therefore concludes that OSB is not entitled to the declaratory relief it seeks against the Duncansons. The Duncansons' motion is granted.

### III.  CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Progressive's Motion for Summary Judgment [Docket No. 26] is GRANTED.

2. OSB's motion for partial summary judgment [Docket No. 37] is DENIED.

3. The Duncansons' Motion for Partial Summary Judgment [Docket No. 31] is GRANTED.

4. Count One of OSB's Complaint is DISMISSED WITH PREJUDICE insofar as it asserts claims against Progressive or the Duncansons. Count One is otherwise DISMISSED WITHOUT PREJUDICE.

5. Count Two of OSB's Complaint is DISMISSED WITH PREJUDICE.

6. Count Three of OSB's Complaint is DISMISSED WITH PREJUDICE.

Dated: September 6, 2006

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

[7] In light of this conclusion, the Court need not consider the issues of whether OSB took the note without notice of the Duncansons' defense and whether OSB is unable to enforce the note even if it is a holder in due course.